Theda **SPURGEON**, Appellant,

v.

**COAN & ELLIOTT**, Attorneys at Law, Appellee.

No. 11–04–00050–CV.

Court of Appeals of Texas, Eastland.

Aug. 31, 2005.

---

Matthew E. Ritchie, Asbury & Asbury, L.L.P., Abilene, William K. Clary, William K. Clary, P.C., Bridgeport, for appellant.

Wayne S. Weaver, Stephenville, for appellee.

Panel consists of: WRIGHT, J., and McCALL, J.[1]

## Opinion

TERRY McCALL, Justice.

Coan & Elliott, Attorneys at Law, (C & E) obtained a jury verdict in its suit against Theda Spurgeon for unpaid attorney's fees and legal expenses that had been charged to Spurgeon by Coan & Elliott, L.L.P., (C & E LLP) in connection with an earlier lawsuit involving real estate. C & E alleged that it was the successor in interest to C & E LLP. In four issues, Spurgeon asserts that (1) C & E had no standing to sue; (2) the trial court erred in granting C & E a partial summary judgment on the ground that C & E LLP had no duty to pursue Spurgeon's alleged claim against Alamo Title Insurance of Texas; (3) the trial court also erred in granting the partial summary judgment on the ground that Spurgeon could not demonstrate any damage because of C & E LLP's failure to pursue her claim against Alamo; and (4) the trial court erred in admitting the initial judgment from the underlying real estate litigation into evidence. We affirm.

Spurgeon had retained C & E LLP to defend her in a suit brought by her brother, Bennie C. Hanson. Hanson claimed that a deed he had given Spurgeon had been intended to be a mortgage to secure repayment of a note that he owed Spurgeon. Spurgeon claimed that the deed represented a conveyance of the property. C & E LLP successfully obtained a judgment in favor of Spurgeon which also awarded attorney's fees to Spurgeon in the sum of $27,000. Hanson appealed the case to the Tenth Court of Appeals in Waco. On appeal, a different attorney represented Spurgeon. The Tenth Court of Appeals abated the case and ordered mediation. Hanson and Spurgeon settled the case, but the judgment based on the settlement ordered that each party pay his or her own attorney's fees.

In its petition in this lawsuit, C & E alleged that Spurgeon still owed $11,000 in attorney's fees and expenses. Spurgeon's answer asserted various affirmative defenses based, in part, on an allegation that C & E (not C & E LLP) had breached its contract for legal services with her by failing to pursue a claim against Alamo after Alamo had denied coverage and refused to defend Spurgeon against her brother's lawsuit. Spurgeon also filed a counterclaim, asserting that C & E (not C & E LLP) had breached its contractual and fiduciary duties by failing to pursue the alleged claim against Alamo. Spurgeon's answer implicitly assumed that C & E was the successor in interest to C & E LLP. She did not challenge C & E's right to sue. After the trial court entered a partial summary judgment that C & E had no duty to pursue a claim against Alamo, C

1. W.G. Arnot, III, Chief Justice, retired effective July 31, 2005. The chief justice position is vacant.

& E obtained a jury verdict for the unpaid attorney's fees and expenses.

## Standing vs. Capacity

Spurgeon filed a motion for judgment n.o.v. on the ground that C & E had no standing because there was no evidence that C & E had an interest in the claim of C & E LLP. This was the first time that Spurgeon raised the issue of standing. After the trial court denied the motion for judgment n.o.v., Spurgeon filed a motion for new trial on the ground that there was no evidence that C & E LLP had assigned its claim to C & E or that C & E had any interest in the claim. The trial court denied Spurgeon's motion for new trial.

A plaintiff must have both standing and capacity to bring a lawsuit. *Austin Nursing Center, Inc. v. Lovato,* No. 03–0659, 171 S.W.3d 845, 2005 WL 1124764 (Tex.2005). As the supreme court in *Lovato* explained:

> The issue of *standing* focuses on whether a party has a sufficient relationship with the lawsuit so as to have a "justiciable interest" in its outcome, whereas the issue of *capacity* "is conceived of as a procedural issue dealing with the personal qualifications of a party to litigate." 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1559, at 441 (2d ed.1990). (Emphasis added)

Although Spurgeon raised the matter of standing in the trial court, standing is a component of subject matter jurisdiction that can be raised for the first time on appeal. *Texas Association of Business v. Texas Air Control Board,* 852 S.W.2d 440, 445–46 (Tex.1993); *Pan American Life Insurance Company v. Erbauer Construction Company,* 805 S.W.2d 395, 396 (Tex.1991). Whether the trial court had subject matter jurisdiction is a question of law subject to de novo review. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998). A plaintiff has standing to sue when he or she is personally aggrieved by the alleged wrong, regardless of whether the plaintiff is acting with legal authority. *Nootsie, Ltd. v. Williamson County Appraisal District,* 925 S.W.2d 659, 661 (Tex. 1996). A party has capacity when that party has the legal authority to act, regardless of whether the party has a justiciable interest in the controversy. *Nootsie, Ltd. v. Williamson County Appraisal District, supra.*

Because James J. Elliott and Richard D. Coan both worked on Spurgeon's earlier case, each had a justiciable interest in their fees and could have sued Spurgeon as a partner of C & E LLP. The matter is one of capacity, rather than standing. Capacity must be challenged by a verified pleading or it is waived. TEX. R.CIV.P. 93; *see Pledger v. Schoellkopf,* 762 S.W.2d 145, 145–46 (Tex.1988) (contention that corporation rather than plaintiff shareholder owned fraud and tortious interference claims challenged capacity to sue and was waived); *Southwest Industries Investment Company, Inc. v. Berkeley House Investors,* 695 S.W.2d 615, 617 (Tex.App.-Dallas 1985, writ ref'd n.r.e.).

Although not published, the case of *Stephenson v. Lynch,* No. 05–99–01874–CV, 2001 WL 126403 (Tex.App.-Dallas, Feb. 15, 2001, pet'n den'd), had similar facts. On appeal, Stephenson challenged Lynch's standing to bring a suit for attorney's fees because the evidence at trial established that the debt Stephenson owed was owed to Lynch & Calvert, P.C., a professional corporation. There was no evidence explaining the relationship between Lynch, who was suing individually, and Lynch & Calvert, P.C. Stephenson also argued that there was no evidence of an essential ele-

ment of Lynch's breach of contract claim because there was no evidence that Lynch individually owned the claim. Just as Spurgeon in our case does not argue that Coan and Elliott had no interest in payment for the legal work that they performed for her, the Dallas Court pointed out that Stephenson did not argue that Lynch had no interest in payment for the legal work he performed for Stephenson. Stephenson complained of Lynch's authority rather than his justiciable interest. Citing *Pledger v. Schoellkopf,* the court held that Stephenson had waived his argument by failing to comply with Rule 93.

We hold that Spurgeon waived her argument by failing to comply with Rule 93. Spurgeon's first issue is overruled.

### The Alleged Claim Against Alamo

Spurgeon alleged claims of breach of fiduciary duty, breach of contract, and fraud against C & E. Her claims arose, in part, from C & E's alleged failure to pursue a claim against Alamo, her title insurance company, for a defense of the underlying suit. The trial court granted a partial summary judgment in favor of C & E on Spurgeon's claims to the extent the claims related to the alleged failure to pursue a claim against Alamo. The trial court determined that Alamo did not have a duty to defend Spurgeon in the underlying suit and that, therefore, C & E did not have a duty to pursue a claim against Alamo. In her second issue, Spurgeon argues that the trial court erred in granting the partial summary judgment.

Spurgeon requested Alamo to provide her a defense in the underlying suit. However, Alamo believed that Spurgeon's policy excluded Hanson's allegations from coverage and, therefore, denied Spurgeon's request for a defense.

 The duty to defend and the duty to indemnify by an insurer involve different principles. *Trinity Universal Insurance Company v. Cowan,* 945 S.W.2d 819, 821–22 (Tex.1997). An insurance company owes no duty to defend unless the petition in the underlying suit contains allegations of fact which fall within the scope of coverage provided for in the policy of insurance. *National Union Fire Insurance Company of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997).

 Courts apply the "eight corners rule," also known as the "complaint allegation rule," in determining whether a duty to defend exists. *King v. Dallas Fire Insurance Company,* 85 S.W.3d 185, 187 (Tex.2002); *Trinity Universal Insurance Company v. Cowan, supra.* Under the "eight corners rule," we look solely at the pleadings and the insurance policy to determine whether the petition contains allegations which come within the scope of coverage. *King v. Dallas Fire Insurance Company, supra.* We consider the allegations in the petition in light of the policy terms without considering either the truth or falsity of the allegations or what the parties know or believe the true facts to be. *Heyden Newport Chemical Corporation v. Southern General Insurance Company,* 387 S.W.2d 22, 24 (Tex.1965). The same is true even if there has already been a judicial determination of the facts. *Heyden Newport Chemical Corporation v. Southern General Insurance Company, supra.* We will not look outside the pleadings and the policy of insurance in our assessment of whether there is a duty to defend. *National Union Fire Insurance Company of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc., supra.* If a petition does not allege facts that fall within the scope of coverage, an insurer is not required to defend a suit against its insured. *American Physicians Insurance Exchange v. Garcia,* 876 S.W.2d 842, 848

(Tex.1994). If a petition only alleges facts excluded by the policy, the insurer is not required to defend its insured. *Fidelity & Guaranty Insurance Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex.1982).

In the underlying suit, Hanson sought to set aside a deed of real property to Spurgeon. Hanson alleged that, on or about November 30, 1993, he executed and delivered to Spurgeon a warranty deed conveying his homestead property to Spurgeon. On its face, the deed was an absolute deed of the property. However, Hanson alleged that he had borrowed money from Spurgeon and that the deed was in reality a mortgage to secure the payment of the loan. Hanson stated in his petition that "[t]he deed ... was intended as a mortgage to secure [his] payment of the Note of November 30, 1993, to [Spurgeon]." Hanson further alleged that the deed was void because it constituted a mortgage of his homestead property. Hanson requested the court to cancel the deed on the ground that it was void. Thus, Hanson's claim depended on his alleged agreement with Spurgeon that the deed was in reality a mortgage, instead of an absolute deed of the property.

Spurgeon's policy required Alamo to "provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured." C & E relied on two policy exclusions in arguing that Alamo did not have a duty to defend Spurgeon in the underlying suit. The policy provided in part as follows:

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses that arise by reason of:

3. Defects, liens, encumbrances, adverse claims or other matters:

(a) created, suffered, assumed or agreed to by the insured claimant;

(b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy.

If Hanson's allegations in the underlying suit fell within either of the above policy exclusions, Alamo did not have a duty to defend Spurgeon in the suit. *Fidelity & Guaranty Insurance Underwriters, Inc. v. McManus, supra* at 788. Hanson's claim to the property was based on an alleged agreement he had with Spurgeon that the deed was in reality a mortgage. Hanson's allegations fell within both of the above exclusions because (1) his adverse claim to the property was allegedly agreed to by the insured (Spurgeon) and (2) the alleged agreement was not known to Alamo.

In her counterclaim, Spurgeon denied that she and Hanson agreed the deed was actually a mortgage. Spurgeon asserted that, because there was no such agreement, Hanson's claim did not fall within the policy exclusions. Spurgeon's assertion begged the question. The issue of Alamo's duty to defend did not depend upon whether an agreement actually existed. Rather, the issue depended upon a consideration of Hanson's allegations in light of the policy terms without considering either the truth or falsity of the allegations. *Heyden Newport Chemical Corporation v. Southern General Insurance Company, supra* at 24. Because Hanson alleged that an agreement existed, his allegations fell within the above policy exclusions. Alamo did not have a duty to defend Spurgeon in the underlying suit. Therefore, the trial court did not err in

granting partial summary judgment to C & E. Spurgeon's second issue is overruled.

Because the trial court correctly based its ruling that C & E had no duty to pursue a claim against Alamo on the "eight corners rule," we need not address Spurgeon's third issue.

### Evidence of the Earlier Judgment

When C & E introduced a copy of the trial court's judgment awarding $27,000 in attorney's fees to Spurgeon, Spurgeon objected only on the basis that the judgment was not a final judgment and had been changed by the Waco Court of Appeals. The trial court admitted the judgment for the limited purpose of allowing the jury to see what had happened in the trial court in the Hanson litigation. During the trial, C & E made it clear to the jury that the earlier judgment had not been a final judgment. Spurgeon also made it clear to the jury that the judgment had been changed on appeal. Even if the trial court erroneously admitted the evidence of the earlier judgment, Spurgeon must also show that the error was calculated to cause and probably did cause the rendition of an improper judgment. TEX. R.APP.P. 44.1; *McCraw v. Maris,* 828 S.W.2d 756, 758 (Tex.1992). Spurgeon has not demonstrated how the trial court's admission of the evidence harmed her. Spurgeon's fourth issue is overruled.

### This Court's Ruling

The judgment of the trial court is affirmed.