COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| DAVID MYRICK, JR. and JANET JACOBSEN MYRICK, | § | No. 08-07-00024-CV |
|  | § | Appeal from |
| Appellants, | § | 112th District Court |
| v. | § | of Crockett County, Texas |
| ENRON OIL AND GAS COMPANY and MOODY NATIONAL BANK, | § | (TC # 5784) |
|  | § |  |
| Appellees. |  |  |

## **O P I N I O N**

David Myrick, Jr. and Janet Jacobsen Myrick[1] appeal from a summary judgment granted in favor of Enron Oil and Gas Company and Moody National Bank. For the reasons that follow, we affirm.

### **FACTUAL SUMMARY**

On August 19, 1935, W.L. Moody, Jr. (Settlor) created an irrevocable trust--known as Trust 25--by virtue of a Trust Agreement between Settlor and City National Bank of Galveston, Texas. Settlor designated City National Bank as Trustee. City National Bank subsequently changed its name to Moody National Bank of Galveston (Moody Bank). Settlor created the trust for the benefit of three of his children [Mary Moody Northen, Libbie Moody Thompson, and Shearn Moody] and three of his grandchildren [Edna Haden Moody, Virginia Moody, and William Lewis

---

[1] When referring to the Appellants individually, we will refer to David Myrick, Jr. as "Myrick" and to Janet Jacobsen Myrick as "Mrs. Myrick" or "Intervenor." When referring to them together, we will refer to them as Appellants.

Moody IV].  The grandchildren are the children of Settlor's fourth child, William Lewis Moody III.

Settlor conveyed to Trust 25 properties located in Brewster, Presidio, and Crockett counties.  The

dispute here involves  Moody Bank's lease of oil and gas rights in the Crockett County properties

to EOG on behalf of Trust 25 (the Crockett County Lease).

The Trust Agreement provided that upon the death of William Lewis Moody III, the Trustee

shall pay over and deliver one-fourth of the Trust Estate to his surviving children and the children

of any of his deceased children in equal shares *per stirpes*.[2]  Edna Haden Moody predeceased her

father, William Lewis Moody III.  As the son of Edna Haden Moody, David Myrick, Jr. is a

beneficiary of Trust 25.

On February 26, 1987, Moody Bank, as Trustee of Trust 25, filed a declaratory judgment

action in Galveston County, Texas, pertaining to the interpretation and administration of Trust 25.

Myrick was a party to that litigation.  William Lewis Moody III died on October 5, 1992, while the

Galveston litigation was pending.  Prior to his death, Moody Bank's Trust Committee approved the

Crockett County Lease but it was not formally executed until December 2, 1992 with an effective

date of September 1, 1992.  For Trust 25 to have the benefit of certain tax credits, the lease had to

be signed and the wells drilled on or before December 31, 1992.  Upon execution of the Crockett

County Lease, EOG drilled several wells and secured the tax credits for Trust 25.

Ultimately, the parties to the declaratory judgment action settled their dispute and the trial

court entered an "Agreed Final Judgment" on March 19, 1993.  The judgment required Moody Bank

to provide Myrick with a distribution deed of real property interests subject to any recorded oil, gas,

or mineral lease once Moody Bank received Myrick's signed receipt and release.  On June 9, 1993,

---

[2]  The Trust Agreement included identical termination provisions pertaining to Mary Moody Northen, Libbie Moody Thompson, and Shearn Moody and their children and grandchildren.

Moody Bank signed a distribution deed to Myrick of an interest in several real properties--including the Crockett County Lease--subject to all recorded oil and gas leases. On August 16, 1993, Myrick executed a receipt and release which acknowledged his receipt of the distribution deed. The release expressly provided that:

> To the extent of such distribution of Realty Interests, I discharge and release The Moody National Bank of Galveston, individually and as trustee from any liability resulting from its acting as trustee of Trust 25, to the date of such partial distribution.

At the time Myrick signed the release, he had knowledge of the Crockett County Lease.

On June 20, 1994, Myrick filed suit against EOG in Brazoria County alleging that the Crockett County Lease was not binding upon him as he had not consented to it. He sought an accounting, a constructive trust on all production under the Crockett County Lease, and recovery of the value of the production attributable to his undivided 5.4167 percent interest. Venue was subsequently transferred to Crockett County. Myrick amended his suit to add Moody Bank as a co-defendant based on its execution of the Crockett County Lease after the death of William Lewis Moody III. He sought actual and exemplary damages from Moody Bank based on his claims for breach of fiduciary duty, conspiracy, and fraud. On June 8, 1999, Myrick amended his petition to allege that Moody Bank breached its fiduciary duty by failing to disclose to him the existence of the Crockett County Lease prior to demanding a release from him in connection with the settlement of the Galveston County litigation. Myrick and his wife divorced on July 6, 1999 and Mrs. Myrick filed a petition in intervention asserting a community interest in Myrick's claims.[3]

Myrick, EOG, and Moody Bank filed motions for summary judgment. On December 29, 2006, the trial court granted summary judgment in favor of Moody Bank. The court expressly found

---

[3] According to Appellants' brief, they have since remarried one another.

that Moody Bank had the authority as well as the duty to execute the oil and gas lease in question; that Myrick's claims were barred by the exculpatory clause of the Trust Agreement, that Myrick's claims were barred by the execution of a mutual release and a receipt and release, and that all of Myrick's claims were barred by the applicable statutes of limitation. The court also denied Myrick's motions for summary judgment against Moody Bank. In a separate order erroneously dated December 29, 2004, the trial court granted summary judgment in favor of EOG and denied Myrick's motions for summary judgment against EOG.[4] The trial court expressly determined that Moody Bank had the authority and duty to execute the Crockett County Lease, that the lease was binding on Myrick, and that EOG has a valid and enforceable lease. Myrick and the Intervenor timely filed notices of appeal.

## SUMMARY JUDGMENT FOR APPELLEES

In Issue One, Appellants challenge the summary judgments granted in favor of Moody Bank and EOG. Both Moody Bank[5] and EOG sought summary judgment on the ground that Moody Bank was authorized to execute the Crockett County Lease after the termination event.

---

[4] By separate order, the trial court later corrected the date to reflect December 29, 2006.

[5] Moody Bank sought summary judgment on other grounds but it is unnecessary to address those arguments due to our disposition of this issue.

*Standard of Review*

The standard of review for traditional summary judgment is well established. *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). The moving party carries the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005); *Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d 778, 784 (Tex.App.--El Paso 1996, writ denied). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Duran*, 921 S.W.2d at 784. All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Id.*; *Duran*, 921 S.W.2d at 784. A movant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Southwestern Electric Power Company v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). Where the trial court's judgment does not specify the ground or grounds relied upon for its ruling, the summary judgment must be affirmed if any of the theories advanced is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Garcia v. El Paso Ltd. Partnership*, 203 S.W.3d 432, 435 (Tex.App.--El Paso 2006, no pet.).

*Moody Bank's Authority*

The trial court granted summary judgment in favor of Moody Bank and EOG specifically finding that: (1) Moody Bank, as Trustee, had the authority and duty to execute the Crockett County Lease; (2) the lease is binding on Myrick; and (3) EOG has a valid and enforceable lease.

The Trust Agreement expressly provided that Moody Bank had the power to sell real estate and to enter mineral leases. None of the beneficiaries had power or authority over the trust estate prior to its actual distribution inasmuch as the Trust Agreement provides:

> No beneficiary shall have the right or power to transfer, assign, anticipate or encumber his or her interest in the Trust Estate or any part thereof prior to the actual distribution thereof to said Beneficiary; and the Trust Estate, in the possession of the Trustee, shall not be liable in any manner for the debts, contracts, engagements or torts of any of the Beneficiaries.

During the existence of a trust, legal title to the res is in the trustee and equitable title is in the beneficiaries. *Sorrell v. Sorrell*, 1 S.W.3d 867, 871 (Tex.App.--Corpus Christi 1999, no pet.) *Shearrer v. Holley*, 952 S.W.2d 74, 78 (Tex.App.--San Antonio 1997, no writ). Upon termination, the legal and equitable interests merge and the beneficiaries acquire full ownership interest in the property. *Sorrell*, 1 S.W.3d at 871. This merger of interests may be accomplished by an express conveyance of the legal title to the beneficiaries by the trustee upon termination of the trust, or it may occur automatically upon termination of the trust where the terms of the trust provide that upon expiration of the trust the trust property shall vest in the beneficiary. *Id.* Here, the trust did not provide that the trust property vested in the beneficiaries upon termination. Instead, there was an express conveyance by distribution deed at the conclusion of the Trust 25 litigation.

After termination, the trustee has the authority under Section 112.052 of the Texas Property Code to continue to exercise the powers of the trustee to wind up the affairs of the trust and to effect distribution. Section 112.052 specifically provides:

> A trust terminates if by its terms the trust is to continue only until the . . . happening of a certain event and the . . . event has occurred. If an event of termination occurs, the trustee may continue to exercise the powers of the trustee for the reasonable period of time required to wind up the affairs of the trust and to make distribution of its assets to the appropriate beneficiaries. The continued exercise of the trustee's powers after an event of termination does not affect the vested rights of beneficiaries of the trust.

Tex.Prop.Code Ann. § 112.052 (Vernon 2007). When the trust terminated on October 5, 1992, Moody Bank had the authority to exercise its powers as trustee for a reasonable period of time to wind up the affairs of Trust 25 and to distribute the assets to the appropriate beneficiaries. But it

could not immediately wind up the affairs of Trust 25 or distribute the assets because of the pending Trust 25 litigation in Galveston County.

The summary judgment evidence established that Moody Bank and EOG had been negotiating an oil and gas lease in Crockett County for several months prior to the death of William Lewis Moody III, and that on July 8, 1992, the Bank's Trust Committee approved the proposed Crockett County Lease. Moody Bank and EOG did not formally execute the lease until December 2, 1992, nearly two months after the death of William Lewis Moody III. An expert witness testified that Moody Bank had the authority to execute the Crockett County Lease within a reasonable period of time after the death of William Lewis Moody III because it had approved the lease prior to his death. In her opinion, Moody Bank's execution of the Crockett County Lease in December of 1992 was an act of administering the trust. She believed the time period required to wind up Trust 25 was reasonable given the ongoing litigation in Galveston County since Moody Bank could not have made a final distribution of the trust assets before judgment was entered in that case. She pointed out that Moody Bank did not know when the litigation would conclude.

The pending Trust 25 litigation prevented Moody Bank from "winding up" the affairs of Trust 25 and making a final distribution until after the agreed judgment was entered on March 19, 1993. During the period after the trust terminated and the conclusion of the Trust 25 litigation, Moody Bank had a continuing duty to manage the trust estate and seek the best possible result for the beneficiaries. In the Bank's judgment, that included completing the Crockett County Lease in order to take advantage of the available tax credits. Given that the Crockett County Lease had been negotiated and approved prior to the termination event, we conclude that Moody Bank had the authority and duty to execute it. Because the Crockett County Lease is valid, summary judgment in favor of Moody Bank and EOG was appropriate. Accordingly we overrule Appellants' first issue

for review.

## APPELLANTS' MOTION FOR SUMMARY JUDGMENT

In Issue Two, Appellants contend the trial court erred by denying Myrick's motions for summary judgment against EOG and Moody Bank which were premised on his cause of action alleging that the lease was void because Moody Bank did not have authority to enter into the Crockett County Lease. Given our resolution of Issue One, the trial court properly denied Myrick's motions for summary judgment against EOG and Moody Bank.

Additionally, Myrick moved for summary judgment on Moody Bank's counterclaim that Myrick breached the Trust 25 litigation settlement agreement, the March 19 release, and the August 16 release. The Bank sought damages and attorney's fees in connection with this claim. Myrick alleged in his motion for summary judgment that his release of the Bank was not supported by consideration. In his brief, Myrick argues without any citation to authority that his summary judgment evidence conclusively established that he received no consideration for the release. The Bank countered in its reply brief that Appellants have waived the issue by not adequately briefing it. Appellants responded by filing a reply brief which includes a citation to *Memorial Medical Center v. Keszler*, 943 S.W.2d 433 (Tex. 1997), in support of their argument that to release a claim, the releasing document must mention it. *Keszler* does not concern failure of consideration. The Rules of Appellate Procedure require that an appellant's brief contain clear and concise argument for the contentions made with appropriate citations to authorities and to the record. *See* TEX.R.APP.P. 38.1(h). Appellants have not provided any authority in support of their argument that the release was not support by consideration. Consequently, they have waived this argument on appeal. *See City of Midland v. Sullivan*, 33 S.W.3d 1, 10 n.6 (Tex.App.--El Paso 2000, pet. dism'd w.o.j.)(appellant failed to brief complaint and thus waived appellate review of issue). For these

reasons, we overrule Issue Two and affirm the judgment of the trial court.


June 10, 2009

_____
ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J., not participating