

# Fourth Court of Appeals

## San Antonio, Texas

## OPINION

No. 04-12-00344-CV

Nina **KELLNER** as Trustee for the Oscar Kellner and Nina Kellner Revocable Living Trust,
and Kirk Kellner,
Appellants

v.

Lloyd **KELLNER**,
Appellee

From the 218th Judicial District Court, Atascosa County, Texas
Trial Court No. 09-11-0872-CVA
Honorable Stella Saxon, Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  November 13, 2013

REVERSED AND RENDERED

        This appeal arises from a dispute involving a trust created by Etta Lee Kellner in 1990 and

Etta's will, which was admitted to probate in 1994 as a muniment of title.  The trial court granted

a partial summary judgment setting aside two deeds conveying land from the trust to Etta's estate

and a second summary judgment declaring that Lloyd Kellner was vested with fee simple

ownership of one-half of all real property remaining in the Etta Lee Kellner Management Trust at

the time of her death.  The two summary judgments were merged into a final judgment, and the

rulings in both summary judgments are challenged in this appeal.  We reverse the trial court's

judgment and render judgment that title to the trust property automatically vested in the beneficiaries of Etta's will.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    Factual Background

On August 30, 1990, Etta Lee Kellner established the Etta Lee Kellner Management Trust and conveyed to the trust property located in both Karnes and Atascosa County. Included in the property was Etta's one-half interest in a 550 acre tract of land in Atascosa County. The other one-half interest in that tract of land had previously been conveyed to Lloyd Kellner, one of Etta's sons. In 1993, Lloyd and Etta's other son, Oscar Kellner, Jr., became the co-trustees of the trust. Section 3.03 of the trust agreement provided:

> Upon the death of the Grantor (referred as the "Decedent" in this Article 3.03), provided this Trust has not been sooner terminated and after payment of Decedent's expenses of last illness, just and legally enforceable debts, funeral expenses, expenses of trust and estate administration, and income and death taxes, if any, this Trust shall terminate and the balance of the Trust Estate remaining on hand shall be distributed in fee simple and free of trust, to the Executor(s) of Decedent's estate, to be disposed of in accordance with the applicable provisions of Decedent's Last Will and Testament.

Etta's Last Will and Testament was executed on November 14, 1990, the First Codicil to her will was executed on October 12, 1992, and a Second Codicil to her will was executed on April 5, 1993. The Second Codicil named Lloyd and Oscar as independent co-executors.

Etta died in 1994. On October 17, 1994, the probate court in Karnes County, Texas admitted Etta's will and codicils to probate "as a Muniment of Title only." The order stated, "notice and citation have been given in the manner and for the length of time required by law."

The order further stated, "that upon the payment of taxes, if any are due, this Estate shall be dropped from the Docket."[1]

The same day Etta's will was admitted to probate as a muniment of title, Oscar, in his capacity as co-trustee of the trust, executed two deeds from the trust to Etta's estate. The first deed conveyed the surface estate in: (1) Etta's one-half interest in the 550 acres of land in Atascosa County; (2) a 416 acre tract of land in Atascosa County; and (3) a 166.5 acre tract of land in Atascosa County. The second deed conveyed the mineral estate in: (1) all interests Etta received by gift from and under her father's will; (2) a 225.8 acre tract of land in Karnes County; (3) a 550 acre tract of land in Atascosa County; and (4) a 166.5 acre tract of land in Atascosa County.

Oscar died in 2004. He was survived by his wife, Nina, and their two sons, Kirk and Trent. Lloyd never married and has no children.

B.      Procedural Background

On November 16, 2009, Lloyd sued Nina, as Trustee for the Oscar Kellner and Nina Kellner Revocable Living Trust, Kirk, and Trent. At the time the trial court granted the summary judgments that are the subject of this appeal, Lloyd's Second Amended Petition was the live pleading.

Lloyd's Second Amended Petition stated, "This lawsuit concerns four parcels of land in Atascosa County." The petition then lists: (1) a 550 acre tract of land in Atascosa County; (2) a 416 acre tract of land in Atascosa County; (3) a 225.8 acre tract of land in Karnes County; and (4) a 166.5 acre tract of land in Karnes County. The petition referenced Oscar's conveyance of the

---

[1] Although the order admitting Etta's will to probate as a muniment of title also stated, "it appearing to the Court that the sole heirs and beneficiaries under the Will, First Codicil and Second Codicil admitted to probate in this Estate are [Oscar and Lloyd], as their interest may be," the appellant's brief filed by Nina Keller states "that Etta left her estate to her two sons for life, with the remainder to her grandsons." The record does not contain a copy of Etta's will.

land by the deeds and requested the trial court to remove the cloud on title created by the deeds. The petition then alleged that the land was still held by the trust and should pass according to descent and distribution, except the surface estate to the 225.8 acre tract which the petition alleged should pass according to Etta's will because Etta "appears to have died possessed of the surface." Finally, the petition asserted, "The Plaintiff contends the interest sought to be established concerns only the 550 acre tract and the 166.5 acre tract described herein."[2]

Lloyd's First Partial Motion for Summary Judgment asserted that the deeds signed by Oscar conveying property from the trust to Etta's estate were void for three reasons: (1) the deeds were not signed by both co-trustees: (2) Etta's estate was a non-entity because the will was not probated and no estate had been created; and (3) no executor had been appointed to whom the corpus of the trust could be conveyed. Lloyd prayed that the deeds be declared void.

In their response to this motion, Nina, Kirk, and Trent asserted that the deeds merely clarified that the real property automatically vested in the beneficiaries of the will when Etta died and her will was admitted to probate as a muniment of title. In addition to their response, Nina, Kirk, and Trent also filed a no evidence motion for summary judgment on Lloyd's claims seeking removal of cloud on title. The motion asserted that the property automatically vested in the beneficiaries of the will, and the deeds executed by Oscar "were unnecessary." The motion further asserted that Lloyd could not offer any evidence that the trust was still in existence or any evidence that the title to the trust property did not vest in the beneficiaries of the will when Etta's will was admitted to probate.

The trial court granted Lloyd's motion, declaring the two deeds to be void, and denied the no evidence motion for summary judgment. After the trial court signed the orders granting Lloyd's

---

[2] Although the petition also asserts an alternative cause of action based on a verbal agreement, Lloyd subsequently non-suited that claim.

motion and denying the no evidence motion, Trent filed a suggestion of bankruptcy. The trial court subsequently severed Lloyd's claims against Trent into a separate lawsuit.

Lloyd then filed a second motion for summary judgment, stating that the issue presented was "in whom is the title to the real property Etta Lee Kellner conveyed into the 'Etta Lee Kellner Management Trust' vested, there being no estate or executor into which the subject property could be conveyed." Before the trial court ruled on Lloyd's second motion, Kirk suffered a stroke, and a guardian ad litem was appointed to represent him. The trial court then signed an order granting Lloyd's motion for summary judgment and declaring that he owned a one-half fee simple interest in: (1) a 225.8 acre tract of land in Karnes County; (2) an undivided one-half interest in a 275 acre tract of land in Atascosa County; (3) a 416 acre tract of land in Atascosa County; (4) a 166.5 acre tract of land in Karnes County; and (5) four lots of land in Karnes County. Finally, the order stated that Lloyd owned a one-half interest in "any and all remaining property, real or personal, tangible or intangible in existence in the [trust] at the time of [Etta's] death."

The trial court subsequently signed a final judgment which combined the rulings in the two summary judgment orders.

### STANDARD OF REVIEW

We review a summary judgment *de novo*. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In reviewing the granting of a traditional summary judgment, we consider all the evidence in the light most favorable to the respondent, indulging all reasonable inferences in favor of the respondent, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). In reviewing the granting of a no-evidence summary judgment, we apply the same legal sufficiency standard as we apply in reviewing a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003).

A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id*. at 751. "When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In such a case, "we render the judgment [that] the trial court should have rendered." *Id*.

## TRENT AS INDISPENSABLE PARTY

For the first time on appeal, Kirk and Nina contend that Trent was an indispensable party, and his severance deprived the trial court of jurisdiction. Lloyd responds that Kirk and Nina have waived this contention by agreeing to the order severing the claims against Trent after he filed a suggestion of bankruptcy. Alternatively, Lloyd responds that Trent is not an indispensable party.

The Texas Supreme Court has indicated that the failure to join a person whose interests could be affected by the trial court's judgment or declaration is not a question of whether jurisdiction is lacking, but whether the trial court should have refused to enter a judgment or declaration in that person's absence. *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 162 (Tex. 2004). Even the case relied upon by Nina and Kirk states, "Although joinder under the UDJA of all persons who have a claim or interest which would be affected by the declaration is mandatory, noncompliance with this mandate does not uniformly constitute a jurisdictional defect." *In re Estate of Bean*, 120 S.W.3d 914, 920 (Tex. App.—Texarkana 2003, pet. denied). As the Texas Supreme Court noted, "it will be a rare indeed when an appellate court properly determines that the trial court lacked jurisdiction to adjudicate a dispute when the nonjoining person's absence is raised for the first time on appeal by one of the parties in the trial court." *Brooks*, 141 S.W.3d at 163 (internal citations omitted). Given the agreed severance, we hold that this is not the rare case where this court should conclude that the trial court lacked jurisdiction based on Trent's absence.

## VESTING OF TITLE TO TRUST PROPERTY

The two primary issues to be decided in this appeal are: (1) whether the deeds from the trust to the estate signed by Oscar as co-trustee are void; and (2) in whom did the title to the trust's property vest. Because we hold that title to the trust property automatically vested in the beneficiaries of Etta's will, we do not reach the issue of whether the deeds signed by Oscar are void or voidable. *See* TEX. R. APP. P. 47.1 (stating opinion should address only those issues necessary to final disposition of appeal).

Upon Etta's death, the trust terminated. *See* TEX. PROP. CODE ANN. § 112.052 (West 2007). The termination of the trust did not, however, affect the authority of the trustees to continue to exercise their powers for a reasonable period of time to wind up the affairs of the trust and to make a distribution of the trust assets to the appropriate beneficiaries. *Id.*

Section 112.052 recognizes that the beneficiaries entitled to receive the trust assets upon termination automatically have vested rights upon the termination event. *See id.* Section 112.052 expressly states, "The continued exercise of the trustee's powers after an event of termination does not affect the vested rights of the beneficiaries of the trust." *Id.* Moreover, the concept of automatic vesting is further supported by the definition of "estate" in the Texas Probate Code which includes "any property to be distributed to the representative of the decedent by the trustee of a trust which terminates upon the decedent's death." TEX. PROB. CODE ANN. § 3(l) (West Supp. 2012).[3] Because the trust property automatically vested in Etta's estate upon Etta's death and the termination of the trust, title to the property immediately vested in the beneficiaries' of Etta's will. TEX. PROB. CODE ANN. § 37 (West 2003) ("When a person dies, leaving a lawful will, all of his

---

[3] Lloyd contends that this court should not consider section 3(l) of the Probate Code because Nina and Kirk did not cite this section in their response to his motion for summary judgment. A non-movant's failure to cite a particular statutory section or appellate court opinion in a summary judgment response, however, does not deprive this court of the ability to consider all of the law applicable to an issue presented on appeal.

estate devised or bequeathed by such will … shall vest immediately in the devisees or legatees of such estate….").

This court has previously recognized this automatic vesting in discussing the ownership of trust property.  *See Schearrer v. Holley*, 952 S.W.2d 74, 78 (Tex. App.—San Antonio 1997, no writ).  As we previously explained:

> It is basic trust law that "for a trust to be a trust, the legal title of the [trust property] must immediately pass to the trustee, and beneficial or equitable interest to the beneficiaries."  During the duration of the trust, neither the beneficiaries nor the trustee own the property.  It is not until the legal and equitable interests merge in the beneficiaries that the beneficiaries acquire a full ownership interest in the property.  This merger of interests may be accomplished by an express conveyance of the legal title to the beneficiaries by the trustee upon termination of the trust, or may occur automatically upon termination of the trust "where by the terms of the trust is provided that upon expiration of the period of duration of the trust the trust property shall vest in the beneficiary."

*Id*.; *see also Sorrel v. Sorrel*, 1 S.W.3d 867, 871 (Tex. App.—Corpus Christi 1999, no pet.) (holding legal title to trust property vests in beneficiaries upon termination of trust without necessity of a conveyance to them of the title by any person, trustee, or executor).  Although our prior decision addressed a situation where the trust instrument provided for an immediate vesting of the property in the beneficiaries, we hold the Probate Code's definition of "estate" expands the automatic vesting to situations in which the trust instrument provides for the distribution of trust property "to the representative of the decedent by the trustee of a trust which terminates upon the decedent's death."  TEX. PROB. CODE ANN. § 3(l) (West Supp. 2012).  In those instances, the trust property automatically vests in the estate, as the beneficiary of the trust, and where the testatrix has a will, title to the property then immediately vests in the beneficiaries of the will.  *Id*. at §§ 3(l), 37.

Based on the foregoing, we hold that title to the trust property vested automatically in the beneficiaries of Etta's will, subject to any subsequent estate administration.  When Etta's will was

subsequently admitted to probate as a muniment of title, the probate court determined that no estate administration was necessary.[4] *See* TEX. PROB. CODE ANN. § 89C(c) (West 2003) ("The person or persons entitled to property under the provisions of such wills [admitted to probate as muniments of title] shall be entitled to deal with and treat the properties to which they are so entitled in the same manner as if the record of title thereof were vested in their names.").

Because the title to the trust's property automatically vested in the beneficiaries of Etta's will, the trial court erred in granting Lloyd's second motion for summary judgment regardless of whether the deeds signed by Oscar are void or voidable. Accordingly, we reverse the trial court's judgment and render judgment that title to the trust property automatically vested in the beneficiaries of Etta's will. *See Mann Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 848 (appellate court may render judgment where competing motions for summary judgment are filed).

## CONCLUSION

The trial court's judgment is reversed and judgment is rendered that title to the property held in the Etta Lee Kellner Management Trust at the time of Etta Lee Kellner's death automatically vested in the beneficiaries of Etta's will.

Catherine Stone, Chief Justice

---

[4] In admitting the will to probate as a muniment of title, the probate court recognized the existence of an "estate" because the probate court had to be "satisfied that there [were] no unpaid debts owing by the estate of the testator" and "that there [was] no necessity for administration upon such estate." TEX. PROB. CODE ANN. § 89C(a) (West 2003).